IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| JACKIE WOODS, LOREN DYSON, MARVIN AVERETT, JULIE BROWN, JOHN FOGARTY, KIM FECTEAU, PAM ANGERHOFFER,<br><br>    Plaintiffs,<br><br>vs.<br><br>NATIONAL MEDICAL CARE, INC., a Delaware Coporation, d/b/a FRESENIUS MEDICAL CARE NORTH AMERICA,<br><br>    Defendant. | No. CIV 00-0419 PK/LFG-ACE |

MEMORANDUM OPINION AND ORDER

THIS MATTER comes on for consideration of Defendant's Motion for Summary Judgment filed November 8, 2000 (doc. 42). Upon consideration whereof,

(1) <u>Summary Judgment Standard.</u> The parties' able submissions relating to the motion have been evaluated in accordance with Fed. R. Civ. P. 56(c) and the standards set forth in <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), and <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). Recognizing that "[t]he central issue in this lawsuit is the parties' interpretation of certain letters from defendant to its former

employees relating to the sale of defendant's home health care division to a third party," the parties jointly moved to stay discovery and the motion was granted.  Docs. 22 & 23.

(2)   Background.  The seven remaining Plaintiffs (Angerhoffer, Averett, Brown, Dyson, Fecteau, Fogarty, and Woods) are prior managers of the Defendant's Homecare division.  In December 1997, each of the Plaintiffs received a letter from the Defendant about the "Homecare Special Retention Program," ("plan").  The letter indicated that the manager was being included in a plan that "will provide you with the opportunity for bonus compensation for remaining with the company through a 'change in control'" (sale of the division).  First Amended Complaint, Exs. 1A-1I.  If a change in control did not occur in 1998, and certain financial performance measures were achieved, the manager was promised a minimum bonus.[1]  If a change in control occurred in 1998 and the sale price of the division was within a

---

[1] The "1997-98 Homecare Special Retention Program" document ("plan description") attached to the letter indicates that the minimum bonus required a change in control, defined as Defendant having less than 50% voting control in the successor organization.  Regardless, it does not appear that Plaintiffs are seeking this minimum bonus.  In fact, the summary judgment evidence suggests that Defendant approved payment of "guaranteed/minimum bonuses" as follows: Angerhoffer ($7,000); Averett ($6,000); Brown ($6,000); Dyson ($6,000); Fecteau ($6,000); Fogarty ($6,000); Woods ($9,000).  Doc. 44, Ex. 10; see also Doc. 1 (Notice of Removal at 3, ¶ 7 stating the amount in controversy for each Plaintiff in minimum and maximum amounts).

certain range, the manager would be eligible for a larger bonus within a range ("enhanced bonus").  Id.  For example, the minimum bonus for the lead Plaintiff (Woods) was $9,000; the enhanced bonus based upon a qualifying change in control ranged from a "threshold bonus" of $19,000 to a "maximum bonus" of $43,000.  Id. Ex. 1A.

(3) The letter contained the following limitations:

> This plan will not apply under any of the following circumstances:
>
> –Voluntary resignation (including retirement) before the date identified as your severance date as determined by management;
>
> –Acceptance of comparable employment with the buyer/joint venture partner or with another unit of the company;
>
> –Refusal to accept comparable employment with the buyer/joint venture partner or with another unit of the company in an equivalent job at no reduction in base pay and at a location which does not require an unreasonable commute from your current residence;
>
> –Disclosure of the contents of this letter;
>
> –Termination for cause.

Amended Complaint, Exs. 1A-1I.  Attached to the letter was a document entitled "1997-8 Homecare Special Retention Program," ("plan description") containing additional information.  Id. Ex. 2. The plan description indicated that the purpose of the plan was "[t]o

-3-

provide an incentive to stay with the company through the date of the sale and maintain revenue and EBITDA[2] objectives in order to maximize the potential sales price of the division." Id.  Bonuses were to be paid in cash within 60 days of any change in control.  Id.

(4) Defendant sold its Homecare division to Home Medical of America, Inc. ("Home Medical"), effective July 29, 1998.  The summary judgment evidence tends to show that all Plaintiffs accepted employment with Home Medical, though none, for a variety of reasons, remain employed there today.  Plaintiff Woods accepted employment with Home Medical and apparently was employed there in 1998 and during part of 1999.  First Amended Complaint at 4-5, ¶¶ 28 & 29, Ex. 3; Doc. 43, Ex. C; Doc. 45, Ex. S.  Plaintiff Dyson was terminated on September 12, 1999, when Home Medical closed the office where he worked and released the entire staff.  Doc. 43, Ex. D at 8; Doc. 44, Ex. 1b at ¶ 10.  Plaintiff Averett was asked to resign by Home Medical effective the end of July 1999.  Doc. 43, Ex. E at 7; Doc. 44, Ex. 1d at ¶ 8, Ex. 3D at 2.  Plaintiff Brown left Home Medical in October 1999, due to a reduction-in-force.  Doc. 43, Ex. F at 7; Doc. 47, Ex. 1d at ¶ 8.  Plaintiff Fogarty was

---

[2] Commonly understood as "earnings before interest, taxes, depreciation and amortization.

terminated due to an office closure in July 1999, although his employment was extended to August 1999. Doc. 44, Ex. 1c at ¶ 9, Ex. 3C at 2. Plaintiff Fecteau chose to leave Home Medical in June 1999, when it closed her branch, moved into another location and downgraded her position, Doc. 44. Ex. 3F at 2-3; Doc. 47, Ex. 1f at ¶ 8. Finally, Plaintiff Angerhoffer's employment with Home Medical ended in June 2000, when it sold certain locations for which she was responsible to another provider. Doc. 44, Ex. 1e at ¶ 10, Ex. 3E at 3.

(5) <u>Remaining Claims.</u> The claims remaining in the First Amended Complaint are: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) bad faith breach of contract as to Plaintiff Woods, (5) promissory estoppel, (6) unjust enrichment, and (7) fraud. The parties agree that all pertinent actions occurred in Massachusetts and that Massachusetts law applies.

(6) <u>Breach of Contract.</u> Plaintiffs contend that the letters and management's representations constitute an express contract. Under Plaintiffs' theory, Defendant made an offer based upon the initial plan documents and its oral representations about the plan. Plaintiffs accepted this offer for an enhanced bonus and furnished consideration by continuing to work for the Defendant and not

-5-

seeking work elsewhere given a likely change in control.

(7)  <u>Summary Judgment Positions on Breach of Contract.</u>  Defendant seeks summary judgment arguing that even if the letters in question create a contract, none of the Plaintiffs is entitled to an enhanced bonus because each accepted comparable employment with Defendant's successor, Home Medical.  Plaintiffs acknowledge the language in the letters that indicates that the plan would not apply in such circumstances, but have submitted affidavits essentially tending to show that (1) the plan description contains no such limitation, (2) Defendant's management (including Bruce Blomstrom and Mike Sicilian) made oral representations subsequent to the letter as to the purpose of the plan and its importance and never stated that if a manager was retained, he or she would not be eligible for the plan bonus.  In their First Amended Complaint, Plaintiffs also suggest that an enhanced bonus based solely upon the letter and plan description would render the bonus illusory–only if a Plaintiff remained with the Defendant and was not offered comparable employment with a successor, would Defendant have to pay the enhanced bonus.  First Amended Complaint at 5, ¶¶ 30-31.  Additionally, Plaintiffs point out that Bruce Blomstrom and Mike Sicilian each received a $250,000 bonus, a point of little relevance in the absence of

information on comparability.

(8) <u>Analysis on Breach of Contract.</u>  Contract interpretation is an issue of law; it becomes a jury issue only where the contract is ambiguous. <u>Coll v. PB Diagnostic Sys., Inc.</u>, 50 F.3d 1115, 1122 (1st Cir. 1995). Given a partially or fully integrated agreement, the parol evidence rule would bar evidence of prior or contemporaneous oral agreements that vary or contradict the terms of an unambiguous agreement.  <u>Id.</u>  Here, it is apparent that the letter and the plan description must be read together; for example, the plan description indicates that individual bonus amounts will be communicated by the letter.  First Amended Complaint, Ex. 2.

(9) Merely because the plan description does not repeat the circumstances under which it does not apply does not create ambiguity because the letter so states in clear terms.  Moreover, the parol evidence rule would preclude prior or contemporaneous evidence contradicting the combined letter and plan because they are integrated as to the circumstances under which the plan will not apply.  <u>See</u> Restatement (Second) of Contracts, §§ 209(3), 210 (1981).  An integration clause is not essential if it is apparent that the language and surrounding circumstances suggest a final and complete expression of the parties' intent on the terms in question.

-7-

Coll, 50 F.3d at 1122-23.

(10) Although the parol evidence rule does not apply to subsequent oral modifications, the Plaintiffs' evidence is insufficient to create a genuine issue of material fact. Plaintiffs essentially contend by affidavit that they were misled by management's cheerleading during the sale process. Merely because management did not restate the terms under which the plan would not apply does not constitute a modification of those terms, even if the Plaintiffs sincerely believed that they would receive enhanced bonuses even if retained by Home Medical. Moreover, Plaintiffs remained employees of the Defendant; Defendant certainly was entitled to enlist their support in maximizing the performance and sales price of the division. The summary judgment evidence makes it clear that the Plaintiff managers also had an interest in being retained by any successor.

(11) Plaintiffs accepted comparable employment with Home Medical; therefore, they were not entitled to participate in the plan so as to receive an enhanced bonus. Six of the seven Plaintiffs have produced no evidence suggesting that their Home Medical employment was not comparable to that with Defendant. Although Plaintiff Angerhoffer states in her affidavit that her position as Regional Director of Sales with Home Medical was not comparable

and involved significantly decreased commissions, Doc. 44, Ex. 1e, the first statement is merely conclusory and both are undermined by her more specific answers to interrogatories. In those answers, she indicates that she was the full-time regional sales manager with Home Medical and Defendant, with annual wages until January 2000 of $84,000 per year, increasing to $92,000 per year thereafter. Doc. 44. Exs. 2E & 3E. Plaintiff Angerhoffer does not indicate that her function, as opposed to title, changed, nor does she indicate that her compensation was reduced. Merely because she may have assumed responsibility for different geographic areas or faced new challenges with Home Medical does not make the position non-comparable.

(12) Plaintiffs' Remaining Claims.

(a) Bad Faith Breach of Contract as to Plaintiff Woods. There being no breach of contract, there is no bad-faith breach of contract as to Plaintiff Woods.

(b) Implied Contract. Given the resolution of the express contract claim, it is unnecessary to discuss the Plaintiffs' alternative contention that an implied contract exists and that Defendant has been unjustly enriched.

(c) Implied Covenant of Good Faith and Fair Dealing. Massachusetts recognizes an implied covenant of good faith and fair dealing in

connection with at-will employment where an employer discharges an employee merely to avoid paying bonuses. Fortune v. National Cash Register Co., 364 N.E.2d 1251, 1255-56 (Mass. 1977). Assuming such an implied covenant applies to Plaintiffs' employment with the Defendant and this plan, Plaintiffs have not been deprived of any benefit (by Defendant's conduct) to which they would be legally entitled given the express terms of the plan. See Coll, 50 F.3d at 1125. Plaintiffs do not appear to be claiming that Defendant arranged their employment with Home Medical (knowing it would not be permanent) for the sole purpose of depriving them of the enhanced bonus. Such an inference is unsupported, and probably runs counter to the self-interest the Plaintiffs had in being retained by Home Medical.

(d)  Promissory Estoppel. As to the claim for promissory estoppel based upon detrimental reliance, it is uncontroverted that each Plaintiff received a letter at the outset clearly indicating that the plan would not apply given acceptance of comparable employment with a successor entity. Thus, management's subsequent discussion about the plan must be viewed against this backdrop, and any reliance upon management's discussion as waiving the plan's applicability provisions by implication would be unreasonable as a matter of law.

    See <u>Sands v. Ridefilm Corp.</u>, 212 F.3d 657, 664 (2000) (promissory estoppel requires a plaintiff to show his or her reliance was reasonable).  Although the Plaintiffs all contend that they detrimentally relied upon the plan by not seeking or accepting other employment, they advance no evidence whatsoever about opportunities foregone.  Doc. 44, Ex. 1a-1g.  Accordingly, summary judgment on this claim is appropriate.

(e) <u>Fraud</u>.  Fraud requires a plaintiff to prove that a defendant knowingly made a false representation of material fact for the purpose of inducing a plaintiff to act, and that a plaintiff relied upon the representation and was thereby damaged.  <u>Sands</u>, 212 F.3d at 663. Given the letters containing the express terms of when the plan applied, Plaintiffs have not provided any evidence suggesting that management's discussion of the plan, without restating the conditions under which it applied, was false, let alone knowingly false.  Moreover, it is not enough to assume that Defendant's president knew that his statements were false based solely upon his position.  <u>See</u> Doc. 44 at 17-18. This is particularly true given that the enhanced bonus would have applied based upon a decision of Home Medical (and not within the control of the Defendant) on whether to retain the Plaintiffs.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED and DECREED that Defendant's Motion for Summary Judgment filed November 8, 2000 (doc. 42), is granted.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the pretrial conference set for January 30, 2001 in this matter is vacated.

DATED this <u>24th</u> day of January 2001, at Kansas City, Kansas.

*Paul Kelly Jr.*
United States Circuit Judge
Sitting by Designation

Counsel:

Gail Heglund and Hannah B. Best, Hannah Best & Associates, Albuquerque, New Mexico, for Plaintiffs.

Marcia E. Lubar, Marcia E. Lubar & Associates, Albuquerque, New Mexico, for Defendant.